UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ELLIOTTE PATRICK COLEMAN, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 05-237 (RCL) |
| POTOMAC ELECTRIC POWER COMPANY, | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

In this employment discrimination action brought *pro se*, plaintiff accuses his former employer, Potomac Electric Power Company ("PEPCO"), of retaliation and intentional infliction of emotional distress. He sues under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the District of Columbia Human Rights Act of 1977, D.C. Code § 2-1401.01 *et seq*. Defendant moves to dismiss or for summary judgment. Upon consideration of the parties' submissions and the entire record, and for the following reasons, the Court will grant defendant's motion for summary judgment.[1]

This is plaintiff's third lawsuit arising from his employment at PEPCO. *See* Order of May 16, 2005. This action stems from alleged "willful and malicious acts of retaliatory harassment committed by Defendant from July 17, 2002 through March 11, 2004." Amended

---

[1] The Court is relying on matters beyond the pleadings and therefore will analyze the case under the summary judgment standards set forth at Fed. R. Civ. P. 56, about which plaintiff was advised by Order of March 16, 2005.

Complaint at 3.  Defendant moves for dismissal on the grounds that the complaint is untimely and fails to state a claim upon which relief may be granted.

*1. The Timeliness of the Complaint*

Defendant, reasonably relying on the filing date of January 31, 2005, asserts that plaintiff failed to file his complaint within 90 days of his receipt of the right-to-sue notice issued to him on June 22, 2004.  *See* 42 U.S.C. § 2000e-5(f)(1) (establishing 90-day limitations period). Plaintiff counters that he filed the complaint on September 23, 2004.  The presumed receipt date is three days from the date of the notice.  *See Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984).  Plaintiff's complaint therefore would be timely under his asserted date. Although the electronic record bears no witness to plaintiff's assertion, an internal court document and a letter to plaintiff from the Clerk of Court fully support plaintiff's claim that the original complaint (dated September 23, 2004) was submitted with an application to proceed *in forma pauperis* (dated same) on September 23, 2004.  The internal document reveals further that in early October 2004, the complaint was subjected to the court's screening procedures for actions submitted with *in forma pauperis* applications, but the Clerk's Office misplaced the papers.  The Clerk's jacket contains correspondence between plaintiff and the Clerk of Court.  By letter of March 22, 2005, the Clerk, in responding to plaintiff's inquiry about his submissions, stated that her office "talked to the judge in the case and the original file date of your case will have no bearing on the case - whether it is file stamped September 2004 or January 2005."[2]

---

[2] While well-intentioned, the Clerk's representations to plaintiff were not only inappropriate but also beyond the scope of her authority.

The complaint was formally filed on January 31, 2005, when the Court granted plaintiff's motion to proceed *in forma pauperis*. Title VII litigants are "not responsible for the administrative delay associated with the Court's review of petitions to proceed *in forma pauperis*. . . . [T]he presentation of a complaint [and] a petition to proceed *in forma pauperis* tolls the ninety-day period of limitations . . . ") (citations omitted); accord *Washington v. White*, 231 F. Supp.2d 71, 75-76 (D.D.C. 2002) (citing cases). Plaintiff timely submitted his complaint within 90 days of his presumed receipt of the right-to-sue notice. Defendant's motion based on untimeliness therefore is denied.[3]

*2. The Merits of the Complaint*

Title VII of the Civil Rights Act of 1964 prohibits an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge . . . under this subchapter." 42 U.S.C. § 2000e-3(a). "An activity is protected if it involves opposing alleged discriminatory treatment by the employer or participating in legal efforts against the alleged treatment." *Globus v. Skinner*, 721 F. Supp. 329, 334 (D.D.C. 1989) (citation omitted). To establish a *prima facie* case of retaliation, plaintiff must show that (1) he engaged in a statutorily protected activity; (2) the employer took an adverse personnel action; and (3) a causal connection existed between the two. *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1423 (D.C. Cir. 1988); accord *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000). The Court will first address whether plaintiff has shown an adverse personnel action.

---

[3] Defendant notes that in plaintiff's previous cases, he immediately obtained the summons and served process upon defendant without delay. Def.'s Amended Reply at 3, n.4. These facts are not probative of the issue because, unlike here, plaintiff had paid the filing fee in the earlier cases and therefore was not subject to the delay associated with the Court's processing of *in forma pauperis* cases.

Plaintiff alleges that he was subjected to "retaliatory harassment" based on numerous acts, including his termination in March 2004.  Amended Complaint at 3.  Harassment standing alone does not amount to a "legally cognizable adverse action by the employer." *Brown v. Brody*, 199 F.3d 446, 453 (D.C. Cir. 1999).  To hold defendant liable, plaintiff must show that defendant's actions resulted in a "diminution in pay or benefits [or] 'some other materially adverse consequences affecting the terms, conditions, or privileges of her employment . . . such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm.'"  *Bailey v. Henderson*, 94 F. Supp.2d 68, 72 (D.D.C. 2000) (quoting *Brown v. Brody*, 199 F.3d at 457); *see Currier v. Postmaster*, 304 F.3d 87, 89 (D.C. Cir. 2002) ("[T]he employee must be worse off after the personnel action than before it; otherwise, he has suffered no objectively tangible harm.").  The only cognizable adverse employment action established here is plaintiff's termination on March 11, 2004.

Initially, plaintiff did not identify the statutorily protected activity in which he was supposedly engaged during the time relevant to this action.  He filed EEO charges in May 2000 and July 2002, but those charges formed the basis of his second lawsuit, *Coleman v. Potomac Electric Power Company*, 310 F. Supp.2d 154, 162 (D.D.C. 2004), *aff'd* 2004 WL 2348144 (D.C. Cir. Oct 19, 2004) (NO. 04-7043), *rehearing en banc denied* (Feb 11, 2005) ("*Coleman II*"), and therefore are not before the Court.  Plaintiff alleges that [o]n December 5, 2003, [he] attended a scheduled appointment within Defendant's Department of Labor Relations during which time he filed a formal complaint of harassment."  Amended Complaint ¶ 11.  Also, "[o]n or about February 2, 2004 he met with Michael Sullivan, Vice President of Customer Care, during which time he complained about the harassment."  *Id*. ¶ 12.  Plaintiff further alleges that

weeks after the February 2004 meeting, "during which time he complained about the harassment . . . he contacted Sullivan's office seeking an answer to the complaint. Rather than answer the complaint, Defendant opted to terminate his employment . . . for having allegedly attended the December 5, 2003 meeting without his supervisor's approval." *Id*. ¶ 12.

Defendant asserts that because plaintiff fails to allege "that his treatment was because of any illegal factor, such as race or retaliation," he has not shown that he was engaged in statutorily protected activity. Defendant's Memorandum of Points and Authorities in Support of Its Motion to Dismiss, or in the Alternative, for Summary Judgment at 6. Defendant proffers the declarations of then-Human Resources Generalist Karen Gentry-May and Vice President Michael Sullivan, who aver that during their respective meetings with plaintiff, he complained about the evaluation process, his supervisors, and harassment but not about matters "protected by anti-discrimination laws." Gentry-May Decl. ¶ 5; Sullivan Decl. ¶ 4. Had plaintiff raised such issues, both declarants state that they would have documented them and Mr. Sullivan would have alerted the appropriate personnel so that the claims could be investigated. Gentry-May Decl. ¶ 6 (referring to attached notes made contemporaneously with her December 2003 meeting with plaintiff ); Sullivan Decl. ¶¶ 4-5 (referring to attached notes made contemporaneously with his February 2004 meeting with plaintiff). In his opposition, plaintiff avers for the first time that during the meetings with these declarants he complained that he "was being harassed because I had participated in activity protected under Title VII." Declaration of Elliotte P. Coleman ¶ 2.[4] The complaint allegations do not support plaintiff's version, and his subsequent statements are too conclusory to adequately rebut defendant's contrary evidence.

---

[4] Inexplicably, this document is attached to Plaintiff's Motion for Stay of Proceedings [Dkt. No. 21].

5

In responding to a summary judgment motion, the "non-movant's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial." *Bailey v. Henderson*, 94 F. Supp.2d 68, 71 (D.D.C. 2000) (citing Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).  In ruling on a summary judgment motion, the Court must accept the non-moving party's statements as true, except those, as presented here, that "are so conclusory as to come within an exception to that rule." *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).  Plaintiff has not presented any evidence to create a genuine issue of material fact on whether the meetings constituted protected activity.  Defendant has demonstrated that they did not.

In his amended opposition, plaintiff claims that his lawsuit filed on June 4, 2003, *Coleman II*, was protected activity.  Defendant does not dispute this claim but instead asserts in its amended reply that the lawsuit is too remote in time from the adverse employment action to support the causation requirement.  Causation may be established by showing that "the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985); *see also Cones v. Shalala*, 199 F.3d at 521 (strong timing evidence alone is sufficient to show a causal connection).  Plaintiff was terminated on March 11, 2004, six days before this Court dismissed *Coleman II*.  Although the reverse would have presented a stronger argument for plaintiff,  the required nexus is satisfied under the liberal standard of stating a *prima facie* case of retaliation. *See Globus v. Skinner*, 721 F. Supp. at 335 (causation established despite "nearly two years between the plaintiff's last overt activity in . . . litigation and her separation" where the plaintiff remained as a potential witness in a trial that began at least six months after her last protected act).

Plaintiff has established a *prima facie* case of retaliation based on the previous litigation. The claim is nonetheless barred by application of *res judicata*.[5]

Under the doctrine of *res judicata*, "the parties to a suit and their privies are bound by a final judgment and may not relitigate any ground for relief which *they already have had an opportunity to litigate even if they chose not to exploit that opportunity whether the initial judgment was erroneous or not*." *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981) (emphasis added). A final judgment on the merits in one action "bars any further claim based on the same 'nucleus of facts,' for 'it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies.'" *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984) (quoting *Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1234 (D.C. Cir. 1977)). In dismissing the June 2003 case, Judge Rosemary Collyer granted leave for plaintiff to amend his complaint by March 29, 2004. *Coleman v. Potomac Electric Power Company*, 310 F. Supp.2d at 162. The case docket (Civ. Action No. 03-1202) shows that plaintiff implicitly declined the Court's invitation to amend. Four days before the amendment deadline, on March 25, 2004, plaintiff filed a request for entry of judgment in which

---

[5] As Judge Collyer noted in *Coleman II*, although defendant:

> has not raised preclusion as a defense, this case presents a "special circumstance" where the Court may raise it *sua sponte*. *Arizona v. California*, 530 U.S. 392, 394-95, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000) ("Most notably, 'if a court is on notice that it has previously decided the issue presented, the court may dismiss the action sua sponte, even though the defense has not been raised. This result is fully consistent with the policies underlying res judicata: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste.' ") (quoting *United States v. Sioux Nation*, 448 U.S. 371, 432 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980)) (Rehnquist, J., dissenting) (citations omitted)).

*Coleman v. Potomac Electric Power Company*, 310 F. Supp.2d at 161, n.5.

he stated that defendant had continued to retaliate against him since the filing of the lawsuit. Plaintiff had the opportunity, and obligation, to present those claims in *Coleman II*. In addition, because *Coleman II* had not concluded before his termination, plaintiff also had the opportunity to file a supplemental complaint to include a retaliation claim based on his termination.[6] He cannot litigate the claims now.  Defendant's motion for summary judgment on the Title VII and DCHRA claims is granted.

Plaintiff also sues defendant for intentional infliction of emotional distress.  "A claim for intentional infliction of emotional distress ("IIED")  requires the plaintiff to show (1) extreme and outrageous conduct by the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Ben-Kotel v. Howard University*, 156 F. Supp.2d 8, 14 (D.D.C. 2001) (quotations and citations omitted)).  "Liability will be imposed only for conduct so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Thompson v. Jasas Corp.*, 212 F. Supp.2d 21, 27-28 (D.D.C. 2002) (citing *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998)) (internal quotations omitted).  Defendant asserts correctly that plaintiff's termination does not remotely state a claim of IIED.  Def.'s Mem. at 8-9.  Its motion for summary judgment on this claim is granted.

---

[6] The same holds true for plaintiff's claim of a hostile work environment that he attempts to raise in his amended opposition.

## III.  CONCLUSION

For the preceding reasons, the Court concludes that plaintiff filed his complaint in a timely manner but has failed to state a claim upon which relief may be granted because he has not established a *prima facie* case on some claims.  The claim on which a *prima face* case is established is barred by the doctrine of *res judicata*.  Accordingly, defendant's motion for summary judgment is granted on all claims.  A separate Order will issue contemporaneously.

_____s/_____
Royce C. Lamberth
United States District Judge

Date: March 21, 2006